JAMES R. OLSON, ESQ.
Nevada Bar No. 116
THOMAS D. DILLARD, JR., ESQ.
Nevada Bar No. 6270
OLSON, CANNON, GORMLEY
ANGULO & STOBERSKI
9950 West Cheyenne Avenue
Las Vegas, NV  89129
Telephone:     (702) 384-4012
Facsimile:      (702) 383-0701

BRIAN P. KAVANAUGH
WILLIAM E. ARNAULT
CAITLIN A. KOVACS
*Pro Hac Vice* Admissions Pending
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

Attorneys for Defendant Trustwave Holdings, Inc.

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| AFFINITY GAMING, a Nevada corporation, <br><br> Plaintiff, <br><br> v. <br><br> TRUSTWAVE HOLDINGS, INC., a Delaware corporation, <br><br> Defendant. | Case No. 2:15-cv-2464-GMN-(PAL) <br><br> Chief Judge Gloria M. Navarro |

## MOTION TO DISMISS AND MEMORANDUM IN SUPPORT

Pursuant to Rules 8, 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant

Trustwave Holdings, Inc. ("Trustwave"), hereby moves the Court to dismiss Plaintiff Affinity

1

Gaming's ("Affinity") Complaint in its entirety.

## INTRODUCTION

Affinity's eight-count complaint relates to Plaintiff's purchase of a limited set of services from Trustwave in the aftermath of a data breach Affinity experienced in October 2013. Following the breach, Affinity solicited Trustwave's services and Affinity and Trustwave, both sophisticated businesses, entered into a written contract in which Trustwave agreed to investigate certain specific cardholder data components of Affinity's network; not Affinity's entire network. Contrary to the allegations in the complaint, nothing in the parties' contract required Trustwave to remediate or secure Affinity's network. Second-guessing the terms of the contract that it entered into, and looking to shift the blame for its second data breach to Trustwave, Affinity now asserts a host of tort claims in an effort to avoid its contractual bargain. None of Affinity's efforts is availing.

*First*, Affinity's breach of contract count must be dismissed because it fails to state a claim. The only specific provision of the contract that Affinity contends Trustwave breached was its warranty of services. However, even if Affinity were correct, the contract explicitly provides that the exclusive remedy for Trustwave's breach of warranty is that, upon notice from Affinity, Trustwave will re-perform the services. Affinity does not allege that it made any such request or notification to Trustwave, and therefore fails to state a claim.

*Second*, Affinity's fraud-based claims must be dismissed for a variety of reasons. To begin, they fail to plead with particularity the "who, what, when, where, and how" of the supposed misrepresentations, and instead rely on general allegations of fraud. In addition, the general representations that Affinity does allege in its Complaint consist of opinions and statements of future intent—neither of which constitutes fraud. Finally, Affinity's fraud claims are nothing more than dressed-up breach of contract claims, all in an attempt to avoid the contractual limitations that otherwise bar or limit Affinity's recovery.

*Third*, many of Affinity's tort claims are barred by the economic loss doctrine. Because the tort claims arise exclusively out of the duties imposed by the contract between Affinity and Trustwave—and the damages sought are purely economic—those claims fall squarely within the prohibitions of the economic loss doctrine and must be dismissed.

*Fourth*, Affinity's declaratory judgment action should be dismissed because it is wholly duplicative of Affinity's other claims—all of which are based on Trustwave's alleged prior actions.

Accordingly, Trustwave respectfully requests that this Court dismiss each of the counts in the Complaint.

## **RELEVANT BACKGROUND**[1]

On or about October 24, 2013, Affinity learned that it had suffered a data breach when unknown hackers were able to compromise the security of the company's network and data. (Compl. ¶¶ 13-14.) Upon learning of the breach, Affinity's cyber insurance carrier recommended that Affinity retain the services of a professional forensic data security investigator. (*Id.* ¶¶ 16-17.) Consistent with that recommendation, Affinity contacted Trustwave. (*Id.* ¶¶ 17-18.) On October 31, 2013, Affinity retained Trustwave, and the parties entered into an Incident Response Agreement (the "Agreement") which set forth the terms and scope of Trustwave's engagement.[2] (*Id.* ¶¶ 24-25) The Agreement states that the scope of

---

[1]      For purposes of this motion to dismiss only, Trustwave accepts as true certain allegations in Affinity's Complaint, as cited herein.

[2]      Attached as Exhibit A hereto is a copy of the Agreement.  In ruling on a motion to dismiss for failure to state a claim, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the documents; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  HGI-Lakeside, LLC dba Lakeside Hotel & Casino, a wholly-owned subsidiary of Affinity, is the party that entered into the Agreement with Trustwave.  The Agreement provides that either party may assign it to any parent without the prior written consent of the other party.  (Ex. A at 14.)  For purposes of this motion to dismiss, Trustwave presumes that HGI-Lakeside LLC assigned the Agreement to Affinity and that is why Affinity is the sole named plaintiff.  Accordingly, Trustwave's Motion

3

Trustwave's investigative obligations was to "establish an understanding of the extent of the potential compromise as required by Visa, MasterCard . . . ." (Ex. A at 7.)  The Agreement also made clear that the scope of Trustwave's work was based on the following information provided to Trustwave by Affinity:  (a) Affinity had one location where the breach may have occurred; (b) Affinity is a brick and mortar merchant consisting of a restaurant and gift shop located inside of a hotel and casino; (c) the environment to be investigated included eight systems where the flow of cardholder data existed; and (d) while the environment had a connection to Affinity's corporate systems, the corporate systems were "not under the scope of this contract."  (*Id.*)

The Agreement also contained a number of terms and conditions governing Affinity and Trustwave's contractual relationship and respective obligations and liabilities.   In particular, Trustwave disclaimed all representations and warranties whatsoever[3], save for the following, which is the only provision that Affinity now alleges was breached:

- Warranties

  o "Trustwave Services.  Trustwave warrants that the services provided under this Agreement shall be performed with that degree of skill and judgment normally exercised by recognized professional firms performing services of the same or substantially similar nature.  The ***exclusive remedy for any breach of the foregoing warranty*** shall be that Trustwave, at its own expense, and in response to written notice of a warranty claim by [Affinity] within 90 days after performance of the Services at issue, re-perform the Services to conform to this standard."  (*Id.* at 13 (emphasis added).)

---

to Dismiss treats HGI-Lakeside LLC and Affinity as one and the same for purposes of this Motion and refers to them collectively herein as "Affinity."

[3]     "EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, TRUSTWAVE DISCLAIMS ALL REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES REGARDING QUALITY, SUITABILITY, MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE (IRRESPECTIVE OF ANY COURSE OF DEALING, CUSTOM OR USAGE OF TRADE) OF ANY SERVICES OR ANY GOODS OR SERVICES PROVIDED INCIDENTAL TO THE SERVICES PROVIDED UNDER THIS AGREEMENT.  Trustwave does not warrant that the CPE or Services are offered without defect or error, or that the operation of the CPE or availability of the Services will be uninterrupted or error-free. . . . ***[Affinity] understands and agrees that receiving the Services does not guarantee that [Affinity's] information systems will be secure.***"  (*Id.* at 14 (emphasis added).)

4

Moreover, contrary to the Complaint allegations, the Agreement expressly provided, and Affinity acknowledged and agreed, that Trustwave's services were ***not*** intended to remediate and/or secure Affinity's network from future intrusion:

- Terms Applicable to Certain Services

  - "***Client acknowledges and agrees that [Affinity's] use of Trustwave's services does not guarantee PCI compliance or that its' [sic] systems are secure from unauthorized access.*** Affinity is responsible for PCI compliance and notification of any suspected breach of its systems and any fines, penalties or registration fee imposed by any payment card association or its acquiring bank." (*Id.* (emphasis added).)

Some months after Trustwave completed its work, Affinity learned of an additional compromise of its networks.  (Compl. ¶ 39.)  Affinity now claims that Trustwave's alleged actions and inactions caused it to suffer monetary damages to remedy the additional data breach. (*Id.* ¶¶ 67-69.)  Affinity's Complaint asserts eight counts against Trustwave: (1) fraudulent inducement; (2) fraud; (3) constructive/equitable fraud; (4) violation of NRS Chapter 598; fraud upon purchasers; misrepresentation; (5) gross negligence; (6) negligent misrepresentation; (7) breach of contract; and (8) declaratory judgment under 28 U.S.C. §§ 2201-2202.  None of the counts states a viable claim against Trustwave.

## LEGAL STANDARD

To support a claim for relief, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although a court must accept well-pleaded facts as true when ruling on a motion to dismiss, a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).  The court does "not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Coto*

*Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (internal quotations and citation omitted); *Chapen v. Munoz*, No. 3:06-cv-00353-BES-VPC, 2009 WL 511114, at *2 (D. Nev. Feb. 25, 2009) (a court "is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.") (internal quotations and citation omitted).  As the Supreme Court has held, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—'that the pleader is entitled to relief'" as required under Rule 8. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. Proc. 8(a)(2)).

Moreover, Affinity's fraud-based claims must clear an even higher pleading hurdle. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).  Rule 9(b) requires allegations of fraud to be pleaded with particularity.  In other words, the allegations forming the basis for the alleged fraud must "be 'specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.'"  *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).  The factual support for each element of fraud must be stated with particularity, specifying "'the who, what, when, where, and how' of the misconduct charged."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Affinity's claims for fraudulent inducement, fraud, equitable fraud, deceptive trade practices, and negligent misrepresentation are all subject to this heightened standard, and in each case Affinity fails to meet its pleading burden. *See Davenport v. GMAC Mortg.*, No. 56697, 2013 WL 5437119, at *2-3 (Nev. Sept. 25, 2013) (dismissing a claim based on NRS 598.0915 because the complaint failed the standards of NRCP 9(b)); *Montes v. Bank of Am. NA*, No. 2:13-CV-00660-RCJ, 2014 WL 1494234, at *14, 8 (D. Nev. Apr. 15, 2014) (stating that a claim under NRS 598.0915 "will be dismissed absent adequate allegations of 'the who, what, when, where,

6

1  and how of the misconduct charged'" and holding that negligent misrepresentation must be pled

2  with particularity under 9(b)).

3
                                    **CHOICE OF LAW**
4

5       Affinity's complaint asserts claims sounding in both contract and tort.  Pursuant to the

6  Agreement and well-established Nevada law, Delaware law applies to both types of claims.

7  **I.    DELAWARE LAW GOVERNS THE AGREEMENT BETWEEN THE PARTIES**
8  **       AND APPLIES TO AFFINITY'S CONTRACT CLAIMS**

9       The Agreement provides that it "shall be governed and construed in accordance with the

10  laws of the State of Delaware, without giving effect to conflict of law principles." (Ex. A. at 14.)

11  Under these circumstances, Nevada respects the freedom of parties to a contract to choose what

12  law should govern their relationship, and will enforce that choice if (a) the parties acted in good

13  faith; (b) they are not trying to evade the law of the real situs of the contract; (c) the choice of

14  law has a substantial relationship to the transaction; and (d) the agreement is not contrary to the

15  public policy of the forum.  *DeLeon v. CIT Small Bus. Lending Corp.*, No. 2:11-CV-01028-PMP,

16
17  2013 WL 1907786, at *6 (D. Nev. May 7, 2013) (quoting *Ferdie Sievers & Lake Tahoe Land*

18  *Co. v. Diversified Mortg. Investors*, 603 P.2d 270, 273 (Nev.1979)).  Here, the Court should

19  honor the parties' Agreement.

20       There are no allegations that the parties were not acting in good faith or attempting to

21  avoid the real situs of the contract in choosing Delaware law to govern their relationship.  Nor

22  are there any allegations suggesting that the choice of law provision in the parties' contract is

23  contrary to the public policy of Nevada.  Finally, Trustwave is incorporated in Delaware, which

24
25  means that Delaware has a substantial relationship to the contract between Trustwave and

26  Affinity.  *Henderson v. Watson*, No. 64545, 2015 WL 2092073, at *1 n. 1 (Nev. Apr. 29, 2015);

27  Compl. ¶ 11.

28

## II.    DELAWARE LAW APPLIES TO AFFINITY'S TORT CLAIMS

Nevada courts have not squarely addressed the application of a contractual choice of law provision to tort claims relating to that contractual relationship.  The Nevada Supreme Court, however, has cited with approval a California Supreme Court case that addressed this precise issue. *See Henderson*, No. 64545, 2015 WL 2092073, at *1, n. 1 (*citing Nedlloyd Lines B.V. v. Superior Court of San Mateo Cnty.,* 3 Cal.4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148, 1153 (Cal. 1992)).

According to the *Nedlloyd* court, "[w]hen two sophisticated, commercial entities agree to a choice-of-law clause" like the one in the Agreement, "the most reasonable interpretation of their actions is that they intended for the clause to apply to all causes of action arising from or related to their contract." *Id.* at 1153.  This is true of all related claims "*regardless of how they are characterized,* including tortious breaches of duties emanating from the agreement or the legal relationships it creates." *Id.* at 1155 (emphasis added).  The California Supreme Court reasoned that:

> Applying choice-of-law provisions to all related causes of action comports with common sense and commercial reality. When a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to all disputes arising out of the transaction or relationship. We seriously doubt that any rational businessperson, attempting to provide by contract for an efficient and businesslike resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship. Nor do we believe such a person would reasonably desire a protracted litigation battle concerning only the threshold question of what law was to be applied to which asserted claims or issues. Indeed, the manifest purpose of a choice-of-law clause is precisely to avoid such a battle.

*Id.* at 1154.

Here, all of Affinity's tort claims are based on allegations regarding Trustwave's performance under or negotiation of the Agreement. (*See* Compl. ¶¶ 77-128.) As a result, Delaware law should govern those claims.

## ARGUMENT

## I.    AFFINITY FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

To state a claim for breach of contract, Affinity must adequately allege that "a contract existed, that [Trustwave] breached an obligation imposed by the contract, and that the breach resulted in damage to [Affinity]." *Chase Manhattan Mortg. Corp. v. Advanta Corp.*, No. CIV.A.01-507 KAJ, 2005 WL 2234608, at *13 (D. Del. Sept. 8, 2005) (citation omitted).

### A.    Affinity Does Not Allege A Breach of Any Specific Contract Provision

In its breach of contract count, Affinity incorporates all of the averments of the Complaint but fails to identify any specific provision which it contends Trustwave breached. (*See* Compl. ¶¶ 129-34.) To be sure, Affinity's Complaint is filled with criticisms of Trustwave, but Affinity fails to tether its complaints to specific obligations Trustwave had under the Agreement.

In the Factual Background section of the Complaint, Affinity makes passing reference to one specific provision of the Agreement, Trustwave's warranty of services. (*Id.* ¶ 29). To the extent that Affinity's breach of contract count is supposed to be based on an alleged violation of that provision, paragraph 8a of the Agreement, Affinity fails to state a claim. Specifically, Trustwave warranted under section 8a that its services would be:

> performed with that degree of skill and judgment normally exercised by recognized professional firms performing services of the same or substantially similar nature. The **exclusive remedy for any breach of the foregoing warranty** shall be that Trustwave, at its own expense, and in response to written notice of a warranty claim by [Affinity] within 90 days after performance of the Services at issue, re-perform the Services to conform to this standard.

(Ex. A. at 13) (emphasis added)   Critically, Trustwave's warranty is accompanied by an exclusive remedy—one which requires notice of a warranty claim.   Affinity has not alleged that it gave written notice of a warranty claim to Trustwave; nor has it alleged that Trustwave refused to honor its warranty obligations following such a request.   As a result, the Complaint fails to plead an actionable breach of paragraph 8a of the Agreement.

### B.       The Implied Covenant Is Inapplicable to Affinity's Claim

Affinity also references the "implied covenant of good faith and fair dealing" in its breach of contract claim.  (Compl. ¶¶ 131-32.)  To the extent that Affinity is attempting to assert a claim for breach of the implied covenant of good faith and fair dealing, the Complaint contains no specific factual allegations that would support such a cause of action.  Rather, Affinity merely concludes that "Trustwave failed to perform those services properly, and failed to fulfill its duty of good faith and fair dealing, as described herein . . ."  (*Id.* ¶ 132.)  Such "labels and conclusions" are insufficient to state a claim and warrant dismissal of the cause of action.  *See Iqbal*, 556 U.S. at 678.

Moreover, Affinity confounds a breach of contract cause of action with a breach of an implied covenant action by alleging that Trustwave breached a duty to perform its express contractual obligations "reasonably, prudently, fairly and in good faith."  (Compl. ¶ 131.) Affinity misunderstands how the implied covenant works under Delaware law.  It is a gap-filling provision; it does not, as Affinity contends, add a "good faith" element to existing contractual obligations.  The implied covenant involves a "cautious enterprise," designed to fill contractual gaps in line with "the parties' reasonable expectations at the time of contracting"—it is *not* a tool used to "rewrite the contract to appease a party who later wishes to rewrite a contract he now believes to have been a bad deal." *Nemec v. Shrader*, 991 A.2d 1120, 1125-26 (Del. 2010) (*en banc*) (citation omitted).  Delaware does not impose additional obligations on parties to a contract beyond those they bargained for, except to fill a gap in the contract regarding a situation

10

that "*could not be anticipated*" when the parties agreed to the contract. *Id.* at 1126. Here, there is no gap to fill. The parties bargained for the standard to which Trustwave's services would be held and allocated the risk of substandard performance, or non-performance, through the remedy outlined therein and as otherwise provided in the remedies provisions of the Agreement. (Ex. A)

For the foregoing reasons, Affinity's Seventh Claim for Relief should be dismissed.

## II.   EACH OF AFFINITY'S FRAUD-BASED CLAIMS IS FUNDAMENTALLY FLAWED

Affinity's fraud-based causes of action all challenge the same two categories of alleged statements: (1) statements allegedly made prior to formation of the contract (Compl. ¶¶ 78(a)-(b), 87(a), 98(a), 110(a), 119, 122(a)) and (2) statements made concerning, and in the course of, Trustwave's performance of the contract. (Compl. ¶¶ 87(b)-(d), 98(b)-(d), 110(b)-(d), 119, 122(b)-(d).)

With regard to the first category, pre-contractual representations, Affinity's Complaint alleges vaguely that in late October 2013 "Trustwave personnel represented that the company had the capabilities to, and would, identify and help remedy the causes of the data breach, as well as facilitate Affinity Gaming's implementation of measures to help prevent further such breaches." (Compl. ¶ 20; *see also* ¶¶78(a), (b), 87(a), 98(a), 110(a), 122(a).) With regard to the second category of alleged representations, each of Affinity's fraud-based claims attacks the same three supposed statements—all allegedly taken from Trustwave's final report delivered at the conclusion of its contract services:

> (i)   "Trustwave misrepresented that it had undertaken a proper investigation to determine the cause of Affinity Gaming's data breach, and to contain and help remedy such breach; "
>
> (ii)   "Trustwave misrepresented at the conclusion of its so-called investigation that the data breach was 'contained' and the suspected backdoor was 'inert'"; and

11

(iii)   "Trustwave misrepresented that its recommendations on improving Affinity Gaming's data security would help to prevent this and further data breaches from occurring."

(*See, e.g.,* Compl. ¶ 110(b)-(d).)

### A.  Affinity's Fraud Claims Based on Pre-Contractual Representations Fail

#### 1.   The Circumstances of the Alleged Pre-Contractual Misrepresentations Are Not Pleaded with Particularity

The Complaint does not specify "the who, what, when, where, and how" regarding the alleged pre-contractual misrepresentations.   *See Kearns*, 567 F.3d at 1124.   Instead, the Complaint alleges only that "[f]rom October 28-31, 2013, Trustwave personnel, including Chris Hague, Grayson Lenik and Matthew Aronson, had *multiple direct and indirect conversations* with Affinity Gaming personnel (including its Vice President of Insurance and Benefits and Vice President of Information Technology)."  (Compl. ¶ 19.)

Absent from the complaint are any specific allegations regarding the purported misrepresentations that could satisfy Rule 9(b).  For example, Affinity does not allege who made the misrepresentations, to whom they were made, the specific statements allegedly made, or when and where these "direct and indirect" conversations took place.   The only allegation regarding the supposed statements is far too generic to support any fraud-based claims.  (Compl. ¶ 20) ("Trustwave personnel represented that the company had the capabilities to, and would, identify and help remedy the causes of the data breach, as well as facilitate Affinity Gaming's implementation of measures to help prevent further such breaches.")  Without these basic details, Affinity cannot state a claim for fraudulent inducement, fraud, equitable fraud, deceptive trade practices, or negligent misrepresentation and each should be dismissed.

#### 2.   The Complaint Fails to Allege That Trustwave Knew That its Pre-Contractual Representations Were False When Made

To state a claim for fraudulent inducement, fraud, equitable fraud, or deceptive trade practice, a plaintiff must allege facts that could allow a court "to reasonably infer that the

[defendant was] in fact aware that the statements they were making to [the plaintiff] were false, or that they were recklessly indifferent as to their falsity."[4]  *Mkt. Am., Inc. v. Google, Inc.*, No. C.A. 09-494-GMS, 2010 WL 3156044, at *6 (D. Del. Aug. 9, 2010) (discussing fraud and fraudulent inducement); *Kolber v. Body Cent. Corp.*, 967 F. Supp. 2d 1061, 1068 (D. Del. 2013) (citing *Narrowstep, Inc. v. Onstream Media Corp., 2010 WL 5422405, at *13 (Del.Ch. Dec. 22, 2010))* (the elements for equitable fraud are the same as those for common law fraud); NRS 598.0915, 598.0923 (actionable misrepresentations or omissions must be made "knowingly").  In support of this element, Affinity offers only the bare assertion that Trustwave made "misrepresentations and omissions with knowledge of, or at least in reckless disregard of, their falsity."  (Comp. ¶¶ 80, 89.)  But Affinity fails to provide any facts that would support this unadorned allegation and, as such, it is conclusory and insufficient to meet the federal pleading standard.  *See Mkt. Am., Inc.*, 2010 WL 3156044, at *6 (bare allegation that defendant "knew these representations to be false when they were made or the representations were made with a reckless indifference to their truth or falsity" was a "blanket assertion" that did "not support [plaintiff's] fraud and fraudulent inducement counts.").

Nor is it enough to allege that a statement must have been false because a service-provider's "representations prior to execution of the agreement[ ] were ultimately incorrect with respect to the [provider's] capacity" to perform a service.  *Id.* (dismissing fraud and fraudulent inducement claims where defendants allegedly failed to perform the services outlined in their Statement of Work).  Therefore, Affinity's claims for fraudulent inducement, fraud, equitable fraud, and deceptive trade practices based on statements purportedly made prior to execution of the contract must be dismissed.

---

[4]     While negligent misrepresentation carries a "reduced state of mind requirement," a plaintiff must still allege the "failure to exercise reasonable care in obtaining or communicating information."  *Snowstorm Acquisition Corp. v. Tecumseh Products Co.*, 739 F. Supp. 2d 686, 709 (D. Del. 2010).

### 3.   Affinity Fails to Allege Justifiable Reliance on Trustwave's Pre-Contractual Statements

Under Delaware law, a plaintiff must allege that it justifiably relied on a misrepresentation in order to state a claim for fraudulent inducement, fraud, equitable fraud, or negligent misrepresentation. *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992) (fraud and fraudulent inducement); *Kolber*, 967 F. Supp. 2d at 1068 (equitable fraud); *Snowstorm Acquisition Corp.*, 739 F. Supp. 2d at 709 (D. Del. 2010) (negligent misrepresentation). However, Affinity expressly disclaimed any such reliance in the Agreement, agreeing that pre-contractual representations were all "superseded by and merged into [the] agreement." (Ex. A at p. 15.)   It is well established that "sophisticated parties may not reasonably rely on representations that are inconsistent with a negotiated contract, when that contract contains a provision explicitly disclaiming reliance upon such outside representations." *J.C. Trading Ltd. v. Wal-Mart Stores, Inc.*, 947 F. Supp. 2d 449, 458 (D. Del. 2013) (internal quotations and citation omitted).   Whatever the nature of the parties' pre-contract discussions regarding the various services Trustwave offers—we don't know because the Complaint provides no details—the contract alone sets forth the services Affinity purchased and the scope of Trustwave's engagement.   Given the express language of the Agreement that Affinity negotiated and agreed to, it cannot justifiably have relied on any of Trustwave's alleged representations that pre-dated the Agreement. *See id*.   Therefore, Affinity has failed to state a claim for fraudulent inducement, fraud, equitable fraud, or negligent misrepresentation based on statements made outside the contract concerning the work to be performed by Trustwave pursuant to the contract.

### 4.   Pre-Contractual Statements Are Not Actionable Fraud Where The Only Evidence of Falsity Is the Allegation of Substandard Performance

Affinity "cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations." *Iotex Commc'ns, Inc.*

*v. Defries,* C.A. No. 15817, 1998 WL 914265, at *4 (Del Ch. Dec. 21, 1998).  Affinity alleges no facts to suggest that Trustwave's representations regarding its ability and intentions to perform whatever services Affinity ultimately contracted with Trustwave to perform were false.   All Affinity offers in this regard is an after-the-fact assessment that Trustwave's performance was allegedly substandard.  (*See* Compl. ¶ 4.)  Under Delaware law, mere evidence of "a party's failure to keep a promise does not prove the promise was false when made," and allegations of such failure are insufficient to support a claim for fraud-based claims.  *AJZN, Inc. v. Yu*, No. CV 13-149 GMS, 2015 WL 331937, at *9 (D. Del. Jan. 26, 2015) (quoting *Berdel, Inc. v. Berman Real Estate Mgmt., Inc.,* 1997 WL 793088, at *8 (Del. Ch. Dec. 15, 1997)) (dismissing fraudulent inducement and fraud claims where plaintiff merely alleged that defendant did not perform and never intended to perform under the contract).   Affinity's allegations regarding Trustwave's ability to perform the contracted-for services are best addressed under contract law, as "it is presumed that the parties to the transaction have allocated the risk of product nonperformance through the bargaining process."  *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1200 (Del. 1992).  Here, the parties did just that—the Agreement allocates the risk of non-performance in a manner equivalent to the value of the contract.  (Ex. A at 13-14.)  Affinity's claims for fraudulent inducement, fraud, equitable fraud, and negligent misrepresentation therefore fail for this additional reason so far as they depend on the alleged pre-contractual statements regarding Trustwave's ability and intent to perform under the contract.

### 5.     The Alleged Pre-Contractual Misrepresentations Are, at Most, Opinions and Statements of Future Intent, Which Are Not Actionable as a Matter of Law

Putting to the side Affinity's other pleading failures, even if the alleged statements regarding Trustwave's capabilities and intent to "investigate, diagnose, and help remedy" the data breach were pleaded with specificity and were false (which they were not), such statements would still not be sufficient to sustain claims sounding in fraud.   The purported

15

misrepresentations are, at most, statements of opinion representing Trustwave's "subjective judgment as to the value and quality of [its] own [abilities]." *See Browne v. Robb*, 583 A.2d 949, 956 (Del. 1990) (citing the RESTATEMENT (SECOND) OF TORTS § 538A comment b (1977)) (dismissing a fraud claim where the alleged misrepresentation regarded an attorney's ability to perform the work he was hired to do). "[S]uch expressions generally are recognized to be matters upon which individual judgments may be expected to differ," and thus cannot be the basis for fraud. *Id*; *see also Mendez v. Fiesta Del Norte Home Owners Ass'n*, No. 2:15-CV-00314-RCJ-NJ, 2015 WL 3507699, at *4 (D. Nev. June 4, 2015) (dismissing claim based on NRS 598.0915 where the alleged misrepresentation was an "opinion," which "could not have constituted a fraud or deception"). Likewise, declarations of Trustwave's *future intent*, as a matter of law, cannot form the basis for fraud. *J.C. Trading Ltd.*, 947 F. Supp. 2d at 459 ("statements of future intent do not constitute 'false representation[s] of fact' that would satisfy the first element of fraudulent misrepresentation") (quoting *MicroStrategy Inc. v. Acacia Research Corp.*, 2010 WL 5550455, at *15 (Del.Ch. Dec. 30, 2010)); *Eastern States Petroleum Co. v. Universal Oil Products Co.*, 24 Del.Ch. 11, 3 A.2d 768, 775 (1939) (statements of opinion or prediction of future events are not actionable). Because, at most, the Complaint pleads generic statements of Trustwave's capabilities and intent to perform, Affinity has not stated a claim for fraudulent inducement, fraud, equitable fraud, deceptive trade practices, or negligent misrepresentation based on Trustwave's alleged pre-contract misrepresentations.

**B. Affinity's Fraud Claims Based on Statements Made During the Performance of the Contract Fail**

**1. Affinity's Complaint Fails to Allege That Trustwave Knew That its Performance Representations Were False**

Affinity's claims for fraud, equitable fraud, and deceptive trade practices all challenge the same series of alleged statements in connection with Trustwave's performance under the Agreement. (Compl. ¶¶ 87b-d, 97b-d, 110b-d.) Each of those claims fails, as Affinity does not

16

sufficiently allege that Trustwave knew, at the time, that its statements were false.   Instead, Affinity alleges that Trustwave "knew or should have known it had not diagnosed and remedied the source of the data breach or the suspected backdoors." (Compl. ¶ 88.)  But this conclusory allegation not only misstates the standard for fraud, but also has inadequate factual support in Affinity's Complaint.   Affinity's allegations regarding what its *subsequent* service provider, Mandiant, found in Affinity's systems are not the type of allegations that could allow a court to "reasonably infer" that *Trustwave* was aware that its *own* statements were false, or was recklessly indifferent regarding falsity. *See Mkt. Am., Inc.*, 2010 WL 3156044, at *6.  Affinity alleges no facts that would allow a court "to reasonably infer that the [defendant was] in fact aware that the statements they were making to [the plaintiff] were false, or that they were recklessly indifferent as to their falsity," and its claims for fraud, equitable fraud, and deceptive trade practices should be dismissed so far as they depend on the post-performance representations. *Id.*

### 2.   The Alleged Performance Statement Regarding Remedial Actions Is An Opinion as to Future Events, Which Is Not Fraudulent as a Matter of Law

In its allegations supporting its claims for fraud, equitable fraud, deceptive trade practices, and negligent misrepresentation, Affinity alleges that "Trustwave misrepresented that its recommendations on improving Affinity Gaming's data security would help to prevent this and further data breaches from occurring.   Trustwave's alleged prediction that, *if* Affinity followed through with its recommended actions, *and* another breach was attempted, the recommended actions would "help to prevent" that breach, is an opinion as to what might happen in the future, which is not a basis for fraud as a matter of law. *Toner v. Allstate Ins. Co.*, 821 F. Supp. 276, 281 (D. Del. 1993) ("'It is the general rule that mere expressions of opinion as to probable future events, when clearly made as such, cannot be deemed fraud or misrepresentations.'") (quoting *Consolidated Fisheries Co. v. Consolidated Solubles Co.*, 35

17

Del.Ch. 125, 112 A.2d 30, 37, *opinion supplemented,* 35 Del.Ch. 178, 113 A.2d 576 (1955));

*Eastern States Petroleum Co.,* 24 Del.Ch. 11, 3 A.2d at 775 (statements of opinion or prediction

of future events are not actionable); *Phillips v. Dignified Transition Sols.*, No. 2:13-CV-2237-

GMN-VCF, 2015 WL 5056406, at *6 (D. Nev. Aug. 25, 2015) (dismissing deceptive trade

practice claim based on alleged "predictions and estimates regarding future activity," as such

statements were not "false statements of existing fact").[5]   Each of Affinity's claims for fraud,

equitable fraud, deceptive trade practice, and negligent misrepresentation must be dismissed so

far as it depends on this alleged misrepresentation.

### III.   AFFINITY'S TORT CLAIMS ARE BARRED BY THE ECONOMIC LOSS DOCTRINE

#### A. FRAUD-BASED TORTS PREMISED ON TRUSTWAVE'S ALLEGED STATEMENTS MADE DURING THE PERFORMANCE OF THE CONTRACT ARE BARRED BY THE ECONOMIC LOSS DOCTRINE

Pursuant to the economic loss doctrine, in order to be cognizable, a tort claim must allege

some loss beyond an "economic loss."   *McKenna v. Terminex Int'l Co.*, No. CIV.A. 04C-02-

022RBY, 2006 WL 1229674, at *2 (Del. Super. Mar. 13, 2006).   Economic loss includes "any

monetary loss, costs of repair or replacement, loss of employment, loss of business or

employment opportunities, loss of good will, and diminution in value."   *Id.* at *4 (internal

quotations and citation omitted).   Economic loss "is essentially the failure of the purchaser to

receive the benefit of its bargain—traditionally the core concern of contract law."   *Id.*

For all of its tort claims, the only harm Affinity alleges is monetary damage, "in an

amount to be proven at trial but which exceed $100,000." (Compl. ¶¶ 93, 103, 128.)   As Affinity

---

[5]      Moreover, the alleged statement by Trustwave does not promise or guarantee security, just as the parties acknowledge in the Agreement. (Ex. A at 14.)   And, even if it had, the Complaint does not allege that Affinity actually followed Trustwave's recommendations, only that it "began to implement" them. (Compl. ¶ 37.)   This additional failing undermines any claim of detrimental reliance on the statement.

does not allege any damages beyond monetary, or economic, losses, it is barred from asserting its fraud, equitable fraud, and negligent misrepresentation claims under the economic loss doctrine.[6]

Moreover, for tort claims to co-exist in an action alongside contract claims, the plaintiff must allege the breach of a duty "independent of the duties imposed by the contract. [W]here an action is based entirely on a breach of the terms of a contract between the parties, and not on a violation of an independent duty imposed by law, a plaintiff must sue in contract and not in tort." *McKenna*, 2006 WL 1229674, at *2 (internal quotations and citation omitted); *Brasby v. Morris*, No. C.A. 05C-10-022-RFS, 2007 WL 949485, at *7-8 (Del. Super. Mar. 29, 2007) (dismissing fraud claims based on "statements and assurances about the progress . . . and completion" of services provided pursuant to contract); *Pinkert v. John J. Olivieri, P.A.*, No. CIV. A. 99-380-SLR, 2001 WL 641737, at *5 (D. Del. May 24, 2001) (dismissing fraud claims where defendants allegedly misrepresented the nature of their work within payment applications where duty to submit these applications arose from the contract).  Where, as here, plaintiffs have attempted to avoid the contracts they themselves bargained for and agreed to by characterizing conduct related to the performance of the contract as fraudulent, Delaware courts will dismiss the claims sounding in fraud.  *See, e.g., Mkt. Am., Inc.*, 2010 WL 3156044, at *7; *AJZN, Inc.*, 2015 WL 331937, at *9.  Here, all of the alleged performance misrepresentations that support Affinity's fraud, equitable fraud, and negligent misrepresentation claims relate to the services that Trustwave provided pursuant to the Agreement.  (Compl. ¶¶ 87b-d, 98b-d, 122b-d.)  As a result, Affinity fails to allege that Trustwave breached any duty independent of its contractual obligations, and these claims must be dismissed.  *McKenna*, 2006 WL 1229674, at *3.

---

[6]     While fraudulent inducement is an exception to the economic loss doctrine, that claim still fails for the reasons stated elsewhere herein. *See Philip A. Templeton, M.D., P.A. v. Emcare, Inc.*, 868 F. Supp. 2d 333, 340 (D. Del. 2012).

**B. AFFINITY'S GROSS NEGLIGENCE CLAIM IS BARRED BY THE ECONOMIC LOSS DOCTRINE**

Under the economic loss doctrine, a negligence claim must be predicated on some loss beyond an "economic loss," or it fails. *Palma, Inc. v. Claymont Fire Co., No. 1*, No. CIVA09L06121JRS, 2009 WL 3865395, at *1 (Del. Super. Nov. 18, 2009). Like its other tort claims, the losses Affinity alleges that it suffered are purely economic. (Compl. ¶ 120.) As Affinity does not allege any damages beyond monetary, or economic, losses, it is barred from asserting its gross negligence claim under the economic loss doctrine.

Moreover, Affinity's gross negligence claim does not allege the breach of any duty "independent of the duties imposed by the contract." *See* Compl. ¶ 118 (alleging Trustwave owed "a duty of care in performing its data security services"); *McKenna*, 2006 WL 1229674, at *2 (internal quotations and citation omitted). All of the allegations that make up Affinity's gross negligence claim relate to the services that Trustwave agreed to provide pursuant to the Agreement. (Compl. ¶ 119.) Affinity alleges that Trustwave "fail[ed] to perform the investigation" described in the Agreement with the requisite level of care. (*Id.*) As the only duty Trustwave is alleged to have breached arises out of the Agreement, Affinity's gross negligence claim must be dismissed. *See McKenna*, 2006 WL 1229674, at *3.

**IV. THE COMPLAINT FAILS TO PLEAD A SPECIAL RELATIONSHIP BETWEEN THE PARTIES NECESSARY TO SUSTAIN A CLAIM FOR EQUITABLE FRAUD**

Affinity's Third Claim for Relief alleges equitable fraud. The elements of equitable fraud echo those for common law fraud, except that the plaintiff is not required to allege intent. Rather, the plaintiff "'must sufficiently plead a special relationship between the parties or other special equities, such as some form of fiduciary relationship or other similar circumstances.'" *Kolber v. Body Cent. Corp.*, 967 F. Supp. 2d 1061, 1068 (D. Del. 2013) (quoting *Narrowstep, Inc.*, 2010 WL 5422405, at *13).

Affinity alleges that, because Trustwave had the ability to provide a service that Affinity could not perform itself, Affinity was in a "special relationship" with Trustwave. (*See* Compl. ¶¶ 96-97.) This is not enough. The only reason parties contract with one another in the first place is because they want or need the services the other party can provide and cannot or will not perform those services themselves. Yet parties to an arms-length contract are not, by virtue of that contract, suddenly involved in a "special relationship" giving rise to heightened duties of care. *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 633 F. Supp. 386, 401 (D. Del. 1986) *on reconsideration*, 643 F. Supp. 449 (D. Del. 1986) (a fiduciary relationship does not arise when two parties "merely enter into an arms-length contract"). This fact is highlighted by the Agreement itself, which states that "[t]he relationship between the parties to this Agreement shall be that of independent contractors." (Ex. A at 14.) For this additional reason, Affinity's equitable fraud count fails.

## V.   NRS CHAPTER 598 DOES NOT APPLY TO CONDUCT PERFORMED UNDER THE AGREEMENT

Affinity's Fourth Claim for Relief alleges violations of NRS Chapter 598, Nevada's Deceptive Trade Practices Act. The relevant portions of the act define a deceptive trade practice to include (a) knowingly making a false representation in a transaction; (b) knowingly making a false representation as to the characteristics of one's services; and (c) knowingly failing to disclose a material fact in connection with the sale or lease of goods or services. NRS 598.0915, 598.0923.

As shown above, Delaware law applies to govern the parties' conduct as it relates to the Agreement and the services provided under the Agreement. Affinity admits that its claims under NRS Chapter 598 are based on statements Trustwave allegedly made "[i]n the course of performing" "forensic data security investigation services" for Affinity. (Compl. ¶¶ 108-10.)

Because the alleged conduct relates to Trustwave's performance under the Agreement—which contains a valid Delaware choice-of-law clause—Nevada law does not govern, and NRS Chapter 598 does not apply to Trustwave's conduct. *See Fuoroli v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:10-CV-2191 JCM GWF, 2011 WL 1871236, at *6-7 (D. Nev. May 16, 2011) (where a contract contained a Florida choice-of-law provision, a related claim under NRS 598.0915 would "necessarily be dismissed if the court finds the contract valid and the choice of law provision stands"). Affinity's claim under NRS Chapter 598 should be dismissed.

## VI.   AFFINITY FAILS TO STATE A CLAIM FOR DECLARATORY ACTION

Affinity's Eighth Claim for Relief is for declaratory judgment under 28 U.S.C. §§ 2201-2202. Declaratory judgment is proper only if such relief would "avoid the 'accrual of avoidable damages to one not certain of his rights'" or "strongly affect present behavior." *See Delaware State Univ. Student Hous. Found. v. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 374 (D. Del. 2008) (citation omitted); *United Mexican States v. Woods*, 126 F.3d 1220, 1223 (9th Cir. 1997) (a declaratory action is unavailable where there is no "continuing violation of law"). As such, "[a] declaratory judgment is inappropriate solely to adjudicate past conduct." *See Delaware State Univ.*, 556 F. Supp. 2d at 374 (internal quotations and citation omitted).

In this case, Affinity's claim for declaratory judgment is based solely on Trustwave's allegedly "wrongful conduct" as it performed the services pursuant to the Agreement more than two years ago. As a result, its declaratory judgment count is wholly duplicative of its other clams and it should be dismissed.

## CONCLUSION

Each and all of the following causes of action should be dismissed for failure to plead with particularity as required by Rule 9(b), or for otherwise failing under Rules 8 and 12(b)(6) to

allege a necessary element to state a claim sounding in fraud:  fraudulent inducement, fraud, equitable fraud, violations of NRS Chapter 598, and negligent misrepresentation.

Additionally, the following causes of action should be dismissed with prejudice pursuant to Rules 8 and 12(b)(6), as they are barred by the economic loss doctrine:  fraud, equitable fraud, gross negligence, and negligent misrepresentation.

Likewise, the following causes of action should be dismissed with prejudice pursuant to Rules 8 and 12(b)(6), as the alleged misrepresentations they rely on are not actionable as a matter of law:  fraudulent inducement, fraud, equitable fraud, deceptive trade practice, and negligent misrepresentation.

Affinity's deceptive trade practices claim should be dismissed with prejudice for the additional reason that NRS Chapter 598 is not applicable to the services rendered by Trustwave and therefore the Complaint fails to state a claim under Rules 8 and 12(b)(6) as to this cause of action.

Affinity's breach of contract claim should be dismissed as well, as Affinity has failed to state a claim as required by Rule 12(b)(6) and Rule 8.

Finally, Affinity's declaratory action claim should be dismissed with prejudice, as Affinity cannot state a cognizable claim against Trustwave.

///

///

///

///

///

///

///

///

23

1   For the foregoing reasons, and as explained more fully above, Trustwave respectfully

2   requests that the Court enter an Order granting this Motion, dismissing Affinity's Complaint in

3   its entirety, and awarding such other relief as is just and equitable.

4   DATED this 29 day of February, 2016.

OLSON, CANNON, GORMLEY,
ANGULO & STOBERSKI

By _____
JAMES R. OLSON, ESQ.
THOMAS D. DILLARD, JR., ESQ.
9950 West Cheyenne Avenue
Las Vegas, Nevada 89129
Attorneys for Defendant
Trustwave Holdings, Inc.

24

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2 9 day of February, 2016, I served the above

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT through the CM/ECF system of

the United States District Court for the District of Nevada (or, if necessary, by U.S. Mail, first

class, postage pre-paid), upon the following:


I. Scott Bogatz, Esq.
Charles M. Vlasic, III, Esq.
Reid Rubinstein & Bogatz
3883 Howard Hughes Parkway, #790
Las Vegas, NV 89169
T:  702-776-7000
sbogatz@rrblf.com
cvlasic@rrblf.com

Jonathan E. Missner, Esq.
Robert B. Gilmore, Esq.
Stein Mitchell Cipollone Beato Missner
1100 Connecticut Avenue, #1100
Washington, DC 20036
T:  202-737-7777
JMissnr@steinmitchell.com
Rgilmore@steinmitchell.com

Attorneys for Plaintiff



_____
An Employee of Olson Cannon Gormley
Angulo & Stoberski